IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

NOTREDAN, LLC,                                    )
a Tennessee Limited Liability Company,            )
                                                  )
          Plaintiff,                              )
                                                  )
v.                                                )          No. 11-2987-STA-tmp
                                                  )
OLD REPUBLIC EXCHANGE                             )
FACILITATOR COMPANY                               )
and REGIONS BANK,                                 )
                                                  )
          Defendants.                             )

---

ORDER GRANTING DEFENDANT OLD REPUBLIC EXCHANGE FACILITATOR
COMPANY'S MOTION TO DISMISS

---

Before the Court is Defendant Old Republic Exchange Facilitator Company's Motion to

Dismiss (D.E. # 13) filed on December 2, 2011.  Plaintiff Notredan, LLC has filed a response in

opposition to Defendant's Motion (D.E. # 21), and Defendant has filed a reply brief (D.E. # 23).  For

the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

BACKGROUND

On November 4, 2011, Defendant removed Plaintiff's Complaint from the Circuit Court of

Shelby County.  Plaintiff alleges the following: Plaintiff was the owner of reall property located in

Tallahatchie County, Mississippi ("the Tallahatchie property").  (Compl. ¶ 5.)  Plaintiff was

interested in selling its property and at the same time purchasing like-kind property adjacent to

property Plaintiff already owned in Tiptonville, Tennessee.  (*Id.*)  Plaintiff sought a property

1

transaction that would allow it to take advantage of Section 1031 of the Internal Revenue Code and the Treasury regulations promulgated under that section. (*Id.*)  As a result, Plaintiff entered into a contract with Defendant by which Defendant would act as a "qualified intermediary" for the 1031 exchange. (*Id.*)  According to the Complaint, Defendant prepared the contract to facilitate the exchange, and the parties executed the contract on February 11, 2011. (*Id.*)

Upon inspection, the contract recited that Plaintiff had entered into an agreement for the sale of Tallahatchie property with a third-party. (Contract Recital C.)  At the closing on that transaction, Plaintiff would assign its interest in the sales agreement to Defendant, and Defendant would complete the transfer of the property to the third-party buyer. (*Id.* § 2.)  A closing agent would then wire the proceeds of the sale to Defendant to be held in trust. (*Id.* § 4.)  Upon the closing of the Tallahatchie property sale, Plaintiff would have 45 days in which to identify the replacement property for the exchange and then approximately 180 days in which to reach an agreement for the purchase of the replacement property. (*Id.* at §§ 5.2–5.4.)  Once Plaintiff had entered into an agreement for the purchase of the replacement property, Plaintiff would assign its rights in the agreement to Defendant. (*Id.* § 6.1.)  Defendant would acquire the property using the proceeds from the sale of the Tallahatchie property and then convey the replacement property to Plaintiff. (*Id.* § 6.2.)  For its role in the qualified exchange, Defendant was to receive a fee of $900.00 as well as all interest income earned on the funds from the sale of the Tallahatchie property sale. (*Id.* § 22.)

The contract appointed David J. Johnson, P.C. to act as the closing agent for the transfer of the Tallahatchie property. (Compl. ¶ 5.)  David J. Johnson, P.C. and David J. Johnson (collectively "Johnson") are not named as parties to this suit.  The Complaint alleges that the transaction for Plaintiff's Tallahatchie property was initiated whereupon the purchasers of the property wire

transferred the sum of $525,000.00 into Johnson's trust account. (*Id.* ¶ 6.)[1]  Ultimately, Plaintiff was unable to complete the section 1031 exchange because Plaintiff could not purchase the replacement property it sought in Tiptonville, Tennessee. (*Id.*)  At that point Plaintiff contacted Johnson about the proceeds from the sale of Plaintiff's Tallahatchie property. (*Id.*)  Johnson gave Plaintiff conflicting and erroneous explanations before finally admitting that a mistake had been made and the proceeds were wired to a bank in Montreal, Canada, or to a bank in New York City or to some third location. (*Id.*)  Plaintiff alleges that neither Johnson nor Defendant were able to obtain the misdirected funds. (*Id.*)  According to Plaintiff, Defendant breached the parties' contract by failing to notify Plaintiff that Defendant never received the executed closing documents related to the sale of the Tallahatchie property or the proceeds of the sale. (*Id.*)  Defendant also failed to notify Plaintiff that it had closed its file on the matter when it did not receive the funds from Johnson. (*Id.*)[2]  The Complaint alleges that Johnson was at all times acting as the agent of Defendant. (*Id.* ¶ 8.)  As such, Defendant is vicariously liable for the acts of Johnson pursuant to the section 1031 of the Internal Revenue Code, its implementing regulations, and state law regarding liability of a principle for the acts of its agent. (*Id.*)  Therefore, the Complaint seeks to hold Defendant liable for breach of contract and vicariously liable for the acts of Johnson. (*Id.* ¶ 11.)

_____

[1] There is no allegation that Defendant ever received the closing documents on the Tallahatchie transaction or carried out its role as the intermediary in transferring the Tallahatchie property to the third-party buyers.

[2] The Complaint goes on to allege that the proceeds were wired to Johnson's IOLTA account at Regions Bank and credited as a deposit to the account in the amount of $525,000.00 on February 15, 2011. (*Id.* ¶ 7.)  On the same day, Johnson deposited $1,400.00 of the proceeds into his business account as a fee and deposited $523,600.00 into a separate trust account at Regions Bank. (*Id.*)  Plaintiff's claims against Defendant Regions Bank are not addressed in the Motion before the Court.

In its Motion to Dismiss, Defendant argues that Plaintiff has failed to state a claim against it upon which relief may be granted. Defendant first argues that the contract between Plaintiff and Defendant did not create an agency agreement between Defendant and Johnson. Nothing in the agreement identifies Johnson as the agent of Defendant. While it is true that the contract refers to Johnson as the "Closing Agent" for the 1031 exchange, nothing in the contract constitutes an agency agreement between Defendant and Johnson. According to Defendant, the "Closing Agent" provision does not delineate Johnson's duties or specify how Defendant could exercise control over Johnson. Johnson was not a party to the contract between Plaintiff and Defendant. Moreover, the contract provides that both Plaintiff and Defendant would execute closing instructions for Johnson so that Johnson might bring about the 1031 exchange. Thus, there is no basis to conclude that Johnson was acting as Defendant's agent.

Even if there existed some grounds for holding that Johnson was Defendant's agent, the other provisions of the contract limit Defendant's liability for Johnson's acts or omissions. The gravamen of Plaintiff's theory is that Johnson negligently transmitted the proceeds for the sale of Plaintiff's Tallahatchie property. Defendant argues that it cannot be held liable for Johnson's failures to follow the parties' closing instructions or failure to transfer the funds to Defendant's escrow account. Specifically, section 21 of the contract between Plaintiff and Defendant provides that Defendant "shall not be liable to [Plaintiff] for any failures or delay in performance by . . . circumstances beyond the reasonable control of [Defendant] including but not limited to [Johnson's] delay and/or failure to follow closing instructions and/or failure to perform." Defendant contends that based on this provision of the contract, Plaintiff cannot hold Defendant vicariously liable for Johnson's acts. Finally, Plaintiff fails to show how Defendant's alleged failures to notify Plaintiff that Defendant did

4

not receive the executed closing documents or closing funds or that Defendant was closing its file breached the terms of the contract.  Therefore, Defendant argues that the Court should dismiss all of the claims against it.

In its response in opposition, Plaintiff argues that Defendant prepared the parties' standardized contract for the 1031 exchange and nominated Johnson as the closing agent for the transactions.  Defendant further gave Johnson instructions for the preparation of the closing documents.  Under the circumstances, Johnson was acting as agent for Defendant.  Thus, Defendant should be held vicariously liable for the acts and omissions of Johnson.  Plaintiff also contends that the contract itself, particularly the provision limiting Defendant's liability, was adhesive and should not be enforced.  Plaintiff asserts that because it was required to comply with the rules and regulations for a section 1031 qualified exchange, its ability to receive the sales proceeds was limited, thereby leaving Plaintiff "completely at the mercy of the qualified intermediary and its hand-picked closing agent. . . ."  Pl.'s Resp. 6.  Even if the Court concluded that the limitation on liability provision was enforceable, Plaintiff argues that the clause is ambiguous.  More specifically, Plaintiff claims that the clause plainly applies only to acts committed by Johnson which are "beyond the reasonable control" of Defendant.  It follows that a finder of fact must first determine which acts were "beyond the reasonable control" of Defendant before the limitation of liability applies.  In other words, if the facts showed that Defendant "failed to take reasonable control in the selection, instruction, control and follow-up of its designated closing agent," the provisions would not limit Defendant's liability for Johnson's acts.  For these reasons Plaintiff argues that the Court should deny the Motion to Dismiss.

In its reply brief, Defendant argues that the contract between the parties was not adhesive

because the parties were sophisticated commercial entities.  Even if the contract was adhesive, the provision at issue would still be enforceable.  The limitation on Defendant's liability under the circumstances listed in the provision is not unconscionable or oppressive.  In fact, the provision underscores that Defendant did not have control over Johnson and would not be held liable for his acts.  Defendant argues that this is not a case where Plaintiff alleges that Defendant took possession of the missing funds or that Defendant could have prevented Johnson's conduct.  Plaintiff is simply attempting to hold Defendant liable for the very conduct that the disclaimer removes Defendant's liability.  Defendant argues that the Court need not even reach the factual issues of whether the contract was adhesive or whether Johnson was Defendant's agent.  The Court should hold that the provision limiting Defendant's liability is not oppressive or unconscionable as a matter of law.  Defendant finally argues that the provision is not ambiguous.  Plaintiff suggests that a factual determination about whether Johnson's acts were "beyond the control" of Defendant is necessary before the clause's application is triggered.  Defendant counters that the provision already defines "circumstances beyond the reasonable control of" Defendant to include Johnson's "delay and/or failure to follow closing instructions and/or failure to perform" and a litany of intervening events.  According to Defendant then, the provision clearly limits Defendant's liability for the acts of Johnson.  Therefore, Plaintiff's allegations against Defendant are subject to dismissal.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled allegations of the complaint as true and construe all

of the allegations in the light most favorable to the non-moving party.[3]  However, legal conclusions or unwarranted factual inferences need not be accepted as true.[4]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[5]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[7]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## ANALYSIS

The Court holds that Plaintiff's claims are subject to dismissal.  Plaintiff has essentially

---

[3]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[4]  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[5]  *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[6]  Fed. R. Civ. P. 8(a)(2).

[7]  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  *See also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[8]  *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[9]  *Iqbal,* 129 S.Ct. at 1949.

7

alleged that Defendant breached the parties' contract for the 1031 qualified exchange and that Defendant is vicariously liable for the negligent acts of Johnson.  For the reasons explained below, the Complaint has failed to state either of these claims.

## I. Exhibits to the Parties' Briefs

As an initial matter, both parties have attached evidentiary exhibits to their briefs that are not part of the pleadings.  Defendant has attached a release from the Tennessee Board of Professional Responsibility regarding the temporary suspension of David J. Johnson from the practice of law (ex. A); a copy of Notredan, LLC's civil complaint against David J. Johnson, P.C. and David J. Johnson filed in state court on June 8, 2011 (ex. C); Notredan, LLC's motion for judgment on the pleadings in its case against Johnson (ex. D); and the state court's order of judgment in favor of Notredan, LLC dated September 12, 2011 (ex. E).  Plaintiff has filed with its response a copy of an email containing Defendant's closing instructions to Johnson (ex. B); emails between Defendant's Senior Sales and Marketing Associate and Johnson's office (exs. C & E); and the affidavit of Plaintiff's Chief Manager William Anderton (ex. D).

Rule 12(d) of the Federal Rules of Civil Procedure provides that

> If, on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[10]

The Court retains the discretion to consider or exclude such extrinsic evidence presented with a Rule

---

[10] Fed. R. Civ. P. 12(d); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008).

12(b) motion.[11]  Even where a party attaches exhibits to a Rule 12 brief, Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."[12] Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which his action is based.[13]

In the case at bar, Plaintiff has attached a copy of the parties' contract to the Complaint.  As a result, the Court finds that the contract is part of the pleadings for all purposes.  As for the exhibits attached to the parties' briefs, the Court finds that by and large these exhibits are not properly considered part of the pleadings, the one exception being Defendant's closing instructions to Johnson.  Both the Complaint (¶ 5) and the contract itself (§ 3) refer to the fact that Defendant issued closing instructions to Johnson.  Otherwise, none of the exhibits, including the suspension of Johnson's law license, Plaintiff's separate lawsuit against Johnson, the Anderton affidavit and the emails concerning the closing, are properly part of the pleadings.  Because the purpose of Defendant's Rule 12(b)(6) motion is to test the sufficiency and plausibility of Plaintiff's pleadings, the Court declines to consider the other exhibits presented with the briefing on Defendant's Motion to Dismiss.

## II. Choice of Law

A federal court sitting in diversity applies the law of the forum state, including the forum's

---

[11] *Jones*, 521 F.3d at 561.  *See also Pueschel v. United States*, 369 F.3d 345, 353 n.3, (4th Cir. 2004); *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003).

[12] Fed. R. Civ. P. 10(c).

[13] *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762 (2d ed. 1990)).

choice-of-law rules.[14]  Generally, Tennessee follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent," including a valid choice of law provision in the parties' contract.[15]  The Court will honor the parties' choice to apply the laws of another jurisdiction if certain conditions are met: (1) their choice-of-law provision must be executed in good faith; (2) their chosen jurisdiction must bear a material connection to the transaction; (3) the basis for their choice of jurisdiction must be reasonable and not a sham; and (4) the choice of the jurisdiction must not be contrary to the fundamental policy of a state having a materially greater interest and whose law would otherwise govern.[16]

Before reaching the merits of the pleadings, the Court notes that there is some question about which state's substantive law to apply.  In its memorandum, Defendant has briefed the law of Tennessee as well as the law of California.  Defendant points out that the contract contained a choice of law provision designating the laws of California as the law governing the interpretation of the contract.[17]  In its memorandum Plaintiff has cited only the law of the state of Tennessee.  The Court holds that for purposes of this Motion, Tennessee law should apply.  Based on the well-pleaded allegations of the Complaint, Tennessee has a materially greater interest in this case.  It appears from the pleadings that the contract between the parties was executed in Tennessee.  According to the

---

[14] *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).

[15] *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973).

[16] *Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980).

[17] Contract § 20 (D.E. # 1-2).

Complaint, Defendant prepared the contract and presented it to Defendant for execution on February 11, 2011, the same day that Johnson was to conduct the closing on the Tallahatchie property and the same day that the missing funds were transferred to Johnson's trust account at Regions Bank.[18]  As Johnson's office and law practice were located in the state of Tennessee, it follows that the contract between Plaintiff and Defendant was executed in Tennessee.  Thus, pursuant to the rule of *lexi loci contractus*, the contract should be governed by Tennessee law unless the parties intended otherwise.

Despite the choice of law provision contained in the contract, neither party has shown why the provision should be honored under the circumstances.  It is not clear what material connection the state of California had to the 1031 qualified exchange.  According to the Complaint, Plaintiff is a Tennessee limited liability company with its principal place of business in Tiptonville, Tennessee.[19]  David J. Johnson, P.C. is a Tennessee professional corporation, and Johnson himself is a resident of Tennessee.  Although Johnson is not a party to this suit, the Complaint alleges that Johnson and his law firm were the closing agents for the transaction and handled wired transaction for the missing funds, placing the closing in the state of Tennessee.  The real property that was the basis of the 1031 exchange was located in the state of Mississippi and the prospective replacement property Plaintiff sought was located in Tennessee.  Based on these allegations, the Court holds that for purposes of this Motion, Tennessee has a materially greater interest in this case than does the state of California.  Therefore, the Court will apply Tennessee law in its merits analysis of the Motion to Dismiss.

## III.  Vicarious Liability for the Negligent Acts of Johnson

---

[18] Compl. ¶ 5.

[19] *Id.* ¶ 1.

Plaintiff's primary claim against Defendant is that Defendant is vicariously liable for the acts and omissions of Johnson under an agency theory. The Complaint alleges that "[a]t all times, David J. Johnson was acting in his capacity as an employee of David J. Johnson PC [sic] and as the closing agent for Old Republic."[20] The pleadings further allege that Johnson "was empowered to act on behalf of [Defendant] pursuant to instructions which [Defendant] did, in fact, provide to Mr. Johnson."[21] Under Tennessee law, the existence of an agency relationship "does not require an explicit agreement, contract, or understanding between the parties."[22] The existence of an agency relationship "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts."[23] Particular significance is attached to the principal's right to control the acts of the agent.[24]

The Court assumes without deciding for purposes of its analysis here that Plaintiff has pleaded sufficient facts to show that Johnson acted as Defendant's agent. Plaintiff has alleged that Defendant had some right to control Johnson's acts with respect to the transaction between Plaintiff and Defendant. The Complaint states that Johnson acted pursuant to instructions he received from Defendant for the closing of the Tallahatchie property. Plaintiff has attached a copy of Defendant's

---

[20] Compl. ¶ 8.

[21] *Id.* ¶ 5.

[22] *White v. Revco Disc. Drug Ctrs., Inc.,* 33 S.W.3d 713, 723 (Tenn. 2000).

[23] *Id.* (quotation omitted).

[24] *Johnson v. LeBonheur Children's Med. Ctr.,* 74 S.W.3d 338, 343 (Tenn. 2002); *Sodexho Mgmt., Inc. v. Johnson,* 174 S.W.3d 174, 178 (Tenn. Ct. App. 2004).

closing instructions to its response in opposition to the Motion to Dismiss.  According to that exhibit, Defendant provided Johnson with documents necessary to consummate the 1031 exchange such as wire transfer instructions, the exchange agreement, the assignment agreement, and a disclosure concerning exchange funds restrictions.[25]  The instructions went on to give specific direction on the preparation and execution of the closing documents.[26]  The Court would add that the contract itself required both parties, Plaintiff and Defendant, to provide instructions for Johnson to carry out the closing on the Tallahatchie property.[27]  Based on the well-pleaded facts of the Complaint and the contents of Defendant's closing instructions for Johnson, the Court assumes that for purposes of this Motion, Plaintiff has plausibly alleged an agency relationship between Defendant and Johnson.

This conclusion, however, does not end the Court's analysis.  Even though Plaintiff has plausibly alleged an agency relationship, there remains the issue of whether Plaintiff can hold Defendant vicariously liable for Johnson's negligent acts.[28]  It is well-settled that when an agency relationship exists, the principal may be liable for the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency.[29]  The Court holds that despite the plausible allegation that Johnson acted as Defendant's agent in the Tallahatchie closing, Plaintiff has

---

[25] Pl.'s Resp. in Opp'n, ex. B (D.E. # 21-2).

[26] *Id.*

[27] Contract § 3.

[28] It should be emphasized that Plaintiff has alleged that Johnson acted negligently, and not intentionally or fraudulently.  *See* Compl. ¶ 8 ("[P]ursuant to state law regarding liability of a principle for the acts of its agent, Old Republic is vicariously liable for the negligence of David J. Johnson, P.C. for the mishandling of the sale proceeds . . . .").

[29] *Creech v. Addington*, 281 S.W.3d 363, 373 (Tenn. 2009) (citation omitted).

nevertheless failed to state a claim against Defendant.  Section 21 of the parties' agreement states, "Intermediary shall not be liable to Exchanger for any failure or delay in performance by . . . circumstances beyond the reasonable control of Intermediary, including, but not limited to Closing Agent's delay and/or failure to follow closing instructions and/or failure to perform. . . ."[30]  The Court holds that on its face this term limits Defendant's liability to Plaintiff for "circumstances beyond the reasonable control of" Defendant and defines such acts to include Johnson's failure to perform.  Plaintiff clearly seeks to hold Defendant liable for Johnson's negligence in handling the proceeds from the sale of Plaintiff's Tallahatchie property.   Johnson's handling of those funds concerns his duty to follow the closing instructions, which addressed the transfer of the funds, as well as his performance of duties related to the closing generally.  The Court finds that these matters concern Johnson's "failure to follow closing instructions and/or failure to perform."  Therefore, the Court holds that the removal of liability in section 21 would apply to Plaintiff's claims against Defendant and that the contract limited Defendant's liability to Plaintiff under the circumstances.[31]

In response to Defendant's argument that the Court should construe this provision to bar Plaintiff's claim for vicarious liability against Defendant, Plaintiff contends that the provision is adhesive and otherwise unenforceable.[32]  The Court disagrees.  The Tennessee Supreme Court has

---

[30] Contract § 21 (D.E. # 1-2).

[31] Plaintiff refers to it as an exculpatory provision; Defendant terms it a disclaimer provision.  In any event, the Court holds that this term relieves Defendant of any liability under the circumstances alleged in the Complaint.

[32] Plaintiff also briefly refers to section 21 as an exculpatory clause and states without elaboration that it is unenforceable as a matter of law.  Pl.'s Resp. 6.  Under Tennessee law, exculpatory clauses are generally enforceable unless enforcement violates public policy.  *See Olsen v. Molzen*, 558 S.W.2d 429 (Tenn. 1977).  The Tennessee Supreme Court has adopted a series of criteria to determine whether an exculpatory clause runs afoul of some public policy.

defined a contract of adhesion as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract."[33] (internal quotation marks omitted). A standardized form offered on a take-it-or-leave-it basis is not *ipso facto* a contract of adhesion.[34] On the contrary, the critical inquiry is whether the "the party occupying the weaker bargaining position" lacks all together "a meaningful choice," which is to say "the choice to 'leave it' " must amount to "no choice at all."[35] Even so, "[e]nforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable."[36]

Putting aside the fact that Plaintiff is not a "consumer" but rather a business entity engaged in a sophisticated property transaction for the purpose of gaining favorable federal tax treatment, Plaintiff has not demonstrated how it lacked a "realistic opportunity to bargain" or "no choice at all" in this negotiation. Plaintiff only states that its right to seek the funds was limited by the

---

*Id.* at 431. Plaintiff has not briefed any of these factors in its response and has not shown why section 21 of the contract should not be enforced as against public policy. Therefore, the Court declines to the consider the issue further.

[33] *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996); *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 478 (6th Cir. 2005) (applying Tennessee law).

[34] *Cooper v. MRM Investment Co.,* 367 F.3d 493, 500 (6th Cir. 2004).

[35] *Id.* at 501–502.

[36] *Buraczynski*, 919 S.W.2d at 320.

requirements of the 1031 qualified exchange.[37]  This is perhaps true as far as Plaintiff's opportunity

to pursue the funds after the closing had occurred.   It has no relevance, however, to the issue of why

Plaintiff was deprived of a "realistic opportunity to bargain" when it decided to enter into the

contract with Defendant in the first place.   In short, the Court is not persuaded that the parties'

contract was adhesive.[38]  Assuming that the contract was adhesive, Plaintiff has still not shown why

it should not be enforced.   Therefore, the Court rejects Plaintiff's argument on this issue.

Plaintiff asserts in the alternative that the provision is ambiguous and calls for a factual

determination of what "circumstances beyond the reasonable control" of Defendant were in this

instance.   Under Tennessee law, courts determining the terms of a contract are to ascertain the intent

of the parties based on the ordinary and natural meaning of the words used in the instrument.[39]  A

court must consider the entire contract in construing any or all of its parts.[40]  This means that "a

contract must be viewed from beginning to end, and all its terms must pass in review, for one clause

---

[37] The Complaint alleges that Defendant is vicariously liable for Johnson's negligence "[p]ursuant to Section 1031 of the Internal Revenue Code and the treasury regulations promulgated there under."  Compl. ¶ 8.  Defendant argues in a footnote to its memorandum that this claim is without merit or support.  Other than its bare assertion that it was "completely at the mercy of the qualified intermediary and its hand-picked closing agent," Plaintiff has not demonstrated how section 1031 creates an agency relationship and imposes liability on an entity like Defendant which acts as an intermediary in a qualified exchange.  Therefore, the Court need not analyze the argument further.

[38] Plaintiff has not even attempted to argue why the contract should not be enforced as against unconscionable, oppressive, or against public policy.

[39] *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

[40] *Cocke County Bd. of Highway Cm'rs. v. Newport Util. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

may modify, limit, or illuminate another."[41]   The construction of a contract presents a question of law, making such issues proper for summary judgment.[42]   If the terms used in an instrument are ambiguous, however, the court must then resort to rules of construction.   Terms are not ambiguous, however, merely because the parties disagree as to the interpretation of a given clause.[43]   "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one."[44]

The Court finds that the relevant language of section 21 is not of uncertain meaning and may not fairly be understood in more ways than one.   Plaintiff argues specifically that the concept of "circumstances beyond the reasonable control" might be understood in more ways than one.   The Court finds this argument well-taken.   As a general matter, what might be outside of the "reasonable control" of one party could depend largely on facts presented in a given situation.   While section 21 limits Defendant's liability generally for events "beyond its reasonable control," the provision goes on to define a series of examples of what constitutes such "circumstances."   Among other things the contract provides that "power failure, rolling blackouts, earthquake, fire, flood, war, insurrection, Act of God, accident, or strike or other labor disturbance" are all "circumstances beyond the

---

[41] *Id.*

[42] *Toomey v. Atyoe*, 32 S.W. 254, 256 (Tenn. 1895); *Manley v. Plasti-Line, Inc.*, 808 F.2d 468, 471 (6th Cir. 1987). *See also* 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2730.1 (3d. ed. 2009) ("The legal effect or construction of a contract is a question of law that properly may be determined on a summary-judgment motion when the parties' intentions are not in issue.").

[43] *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994).

[44] *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975).

reasonable control of" Defendant.[45]  Most importantly, this non-exhaustive list includes the term at issue that removes Defendant's liability for Johnson's "delay and/or failure to follow closing instructions and/or failure to perform."  Viewing the entire contract from beginning to end, the Court construes the contract to define plainly and unambiguously "circumstances beyond the reasonable control" of Defendant to include Johnson's failure to follow closing instructions and failure to perform.  There is no dispute in this case that the closing instructions gave Johnson specific directions for the wire transfer of the proceeds upon closing and that Johnson negligently failed to follow those instructions.  Therefore, the Court holds as a matter of law that removal of liability in section 21 of the contract clearly and unambiguously includes liability for Johnson's negligent acts in connection with misdirecting the funds.

Having held that the contract removed Defendant's liability for the negligent acts of Johnson, Defendant's Motion to Dismiss is **GRANTED** as to this issue.

## IV.  Breach of Contract

Although neither party squarely addresses this theory, the Complaint can be read to allege that Defendant is liable for breach of contract.  Specifically, Plaintiff has alleged that Defendant breached the parties' agreement in two ways: (1) by failing to notify Plaintiff that Defendant never received the executed closing documents related to the sale of the Tallahatchie property or the proceeds of the sale; and (2) by failing to notify Plaintiff that it had closed its file on the matter when it did not receive the funds from Johnson.  The Complaint refers to these claims as Defendant's

---

[45] Contract § 21.

"breach of its fiduciary obligations under the contract."[46]  Just as the Court concluded that Tennessee law should apply to Plaintiff's agency theory, the Court likewise holds that Tennessee law should apply to the breach of contract claims.

Under Tennessee law, a plaintiff alleging breach of contract must prove (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach.[47]  It is undisputed that the parties entered into a contract and that the purpose of the contract was to effectuate a tax-favored transaction of real property.  Therefore, the Court holds that this first element of Plaintiff's claim is well-pleaded.  As for the alleged breach, Plaintiff contends that Defendant did not notify Plaintiff when Johnson failed to send Defendant the executed closing documents related to the sale of the Tallahatchie property or the proceeds of the sale.  Plaintiff further alleges that Defendant never notified Plaintiff when Defendant closed its file on the proposed transaction.  The Court holds that Plaintiff has failed to plead facts to support its allegation that Defendant breached the contract.  Plaintiff has not identified what provision of the contract imposed a duty on Defendant to give Plaintiff notice that Johnson did not send the closing documents or the funds to Defendant or later to give notice that it was closing its file on the contract.  The only contractual duties Defendant had with respect to the sale of the Tallahatchie property were to (1) accept an assignment of Plaintiff's contractual rights to sell the property to a third-party buyer (§ 2.1); (2) comply with the sale agreement between Plaintiff and the third-party buyer (§ 2.2); (3) transfer the Tallahatchie property to the third-party buyer (§ 2.2); and (4) provide closing instructions to Johnson to carry out the

_____

[46] Compl. ¶ 8.

[47] *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law).

transaction (§ 3).  Plaintiff has failed to allege how Defendant's lack of notification to Plaintiff breached any of these provisions.

What Plaintiff has alleged is that Johnson failed to carry out the parties' closing instructions, specifically, by misdirecting the proceeds from the sale of the Tallahatchie property.  The Complaint at paragraph 6 alleges that Plaintiff contacted Johnson about the funds and that Johnson finally admitted that he had made a "huge mistake."  Plaintiff has not alleged that Defendant was even aware of Johnson's "huge mistake," at the time it occurred or even when Plaintiff first learned about it.  Furthermore, nothing in the contract required either party, Defendant or Plaintiff, to give the other party notice in the event that Johnson as the closing agent failed to perform.  Therefore, Plaintiff has failed to state a claim for breach of contract based on Defendant's failure to give notice about Johnson's failure to send Defendant the closing documents and the sale proceeds or Defendant's decision to close its file on the parties' proposed transaction without further notice to Plaintiff. Therefore, to the extent that Plaintiff's Complaint includes a claim for breach of contract, those claims are dismissed.[48]

---

[48] The Court notes that the Complaint refers only once to Defendant's "fiduciary obligations" to Plaintiff.  Compl. ¶ 8.  Other than this passing mention, the Complaint does not allege the existence of a fiduciary duty Defendant owed to Plaintiff.  Neither party has actually addressed the issue in their briefing on Defendant's Motion.  Under Tennessee law, a fiduciary duty is created "when confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence or exercise dominion over the weaker or dominated party." *Edwards v. Travellers Ins. of Hartford,* 563 F.2d 105, 115 (6th Cir.1977) (quoting *Iacometti v. Frassinelli,* 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973); *Federal Exp. Corp. v. Accu-Sort Sys., Inc.*, No. 01-2503, 2006 WL 167495, at *5 (W.D. Tenn. Jan. 20, 2006).  As a matter of law, however, "contracts between sophisticated commercial entities, negotiated at arm's length, do not create fiduciary duties between the parties." *O'Neal v. Burger Chef Sys., Inc.,* 860 F.2d 1241, 1349 (6th Cir. 1988); *Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002).
    Furthermore, it is plausible that Johnson owed Plaintiff a fiduciary duty by virtue of his

## CONCLUSION

The Court holds that Plaintiff has failed to state a claim upon which relief may be granted against Defendant.  Plaintiff's claim to hold Defendant vicariously liable for the acts of its alleged agent fails because the contract between the parties removed Defendant's liability for the agent's failure to follow closing instructions and failure to perform.  The pleadings further fail to state a claim for breach of contract because the contract did not require Defendant to give Plaintiff notice that it did not receive the closing funds or that it was closing its file on the matter.  Therefore, Defendant Old Republic Exchange Facilitator Company's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**

S. THOMAS ANDERSON

UNITED STATES DISTRICT JUDGE

Date: April 6, 2012.

---

status as the closing agent.  *Johnson v. Equity Title & Escrow Co. of Memphis, LLC*, 476 F. Supp. 2d 873, 885–86 (W.D. Tenn. 2007) (Donald, J.) (holding that closing attorney owed party to real estate transaction fiduciary duty).  Although Plaintiff does not make this argument here, there are cases where plaintiffs have sought to hold another liable for aiding and abetting the breach of a fiduciary duty related to 1031 qualified exchanges.  *Cahaly v. Benistar Prop. Exchange Tr. Co., Inc.*, 885 N.E.2d 800, 810–11 (Mass. 2008).

Because the parties have not actually raised these issues, the Court declines to reach them.