## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| NOTREDAN, LLC,<br>a Tennessee Limited Liability Company,<br><br>       Plaintiff,<br><br>v.<br><br>OLD REPUBLIC EXCHANGE<br>FACILITATOR COMPANY<br>and REGIONS BANK,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      No. 11-2987-STA-tmp |

## ORDER GRANTING DEFENDANT REGIONS BANK'S MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is Defendant Regions Bank's Motion for Judgment on the Pleadings (D.E. # 25) filed on March 12, 2012.  Plaintiff Notredan, LLC has filed a response in opposition to Defendant's Motion (D.E. # 30), and Defendant has filed a reply brief (D.E. # 32).  For the reasons set forth below, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

## BACKGROUND

Plaintiff's Complaint alleges that Plaintiff was the owner of real property located in Tallahatchie County, Mississippi ("the Tallahatchie property").  (Compl. ¶ 5.)  Plaintiff was interested in selling its property and at the same time purchasing like-kind property adjacent to other property Plaintiff already owned in Tiptonville, Tennessee.  (*Id.*)  Plaintiff sought a property transaction that would allow it to take advantage of Section 1031 of the Internal Revenue Code and

the Treasury regulations promulgated under that section.  (*Id.*)  As a result, Plaintiff entered into a contract with Old Republic Exchange Facilitator Company ("Old Republic") by which that party would act as a "qualified intermediary" for the 1031 exchange.  (*Id.*)[1]  According to the Complaint, Old Republic prepared the contract to facilitate the exchange, and the parties executed the contract on February 11, 2011.  (*Id.*)

Upon inspection, the contract recited that Plaintiff had entered into an agreement for the sale of the Tallahatchie property with a third-party.  (Contract Recital C.)   At the closing on that transaction, Plaintiff would assign its interest in the sales agreement to Old Republic, and Old Republic would complete the transfer of the property to the third-party buyer.  (*Id.* § 2.)  A closing agent would then wire the proceeds of the sale to Old Republic to be held in trust.  (*Id.* § 4.)  Upon the closing of the Tallahatchie property sale, Plaintiff would have 45 days in which to identify the replacement property for the exchange and then approximately 180 days in which to reach an agreement for the purchase of the replacement property.  (*Id.* at §§ 5.2–5.4.)  Once Plaintiff had entered into an agreement for the purchase of the replacement property, Plaintiff would assign its rights in the agreement to Old Republic.  (*Id.* § 6.1.)  Old Republic would acquire the property using the proceeds from the sale of the Tallahatchie property and then convey the replacement property to Plaintiff.  (*Id.* § 6.2.)  For its role in the qualified exchange, Old Republic was to receive a fee of $900.00 as well as all interest income earned on the funds from the sale of the Tallahatchie property.  (*Id.* § 22.)

The contract appointed David J. Johnson, P.C. to act as the closing agent for the transfer of the Tallahatchie property.  (Compl. ¶ 5.)  David J. Johnson, P.C. and David J. Johnson (collectively

[1] On April 6, 2012, the Court granted Old Republic's Motion to Dismiss (D.E. # 31).

"Johnson") are not named as parties to this suit.  The Complaint alleges that the transaction for Plaintiff's Tallahatchie property was initiated whereupon the purchasers of the property wire transferred the sum of $525,000.00 into Johnson's trust account.  (*Id.* ¶ 6.)  Ultimately, Plaintiff was unable to complete the section 1031 exchange because Plaintiff could not purchase the replacement property it sought in Tiptonville, Tennessee.  (*Id.*)  At that point Plaintiff contacted Johnson about the proceeds from the sale of Plaintiff's Tallahatchie property.  (*Id.*)  Johnson gave Plaintiff conflicting and erroneous explanations before finally admitting that a mistake had been made and the proceeds were wired to a bank in Montreal, Canada, or to a bank in New York City or to some third location.  (*Id.*)  Plaintiff alleges that neither Johnson nor Old Republic were able to obtain the misdirected funds.  (*Id.*)

The Complaint goes on to allege that the proceeds were wired to Johnson's IOLTA account at Defendant Regions Bank and credited as a deposit to the account in the amount of $525,000.00 on February 15, 2011.  (*Id.* ¶ 7.)  On the same day, Johnson deposited $1,400.00 of the proceeds into his business account as a fee and deposited $523,600.00 into a separate trust account at Regions Bank.  (*Id.*)  The $523,600.00 deposit at Regions Bank was on a check payable to Notredan, LLC. (*Id.*)  Even though the check was not endorsed by Notredan, LLC, the Complaint alleges that Defendant Regions Bank improperly honored and paid the check to some payee other than Plaintiff. (*Id.*)  According to the Complaint, Defendant Regions Bank had a duty imposed by law to conduct its business pursuant to the Tennessee Uniform Commercial Code ("UCC") as well as sound banking practices.  (*Id.* ¶ 9.)  The Complaint alleges that Defendant Regions Bank breached its duty by honoring a check made payable to Notredan, LLC, which was not endorsed by Notredan, LLC.  (*Id.*)

In its Motion for Judgment on the Pleadings, Defendant argues that Plaintiff's claims are

subject to dismissal.  First, Defendant contends that Plaintiff's claims are barred as res judicata. According to Defendant, Plaintiff obtained a $525,000.00 judgment against Johnson in state court in 2011 on the same claims.  Defendant argues that the judgment was final and on the merits and asserted the same cause of action as the case at bar.  Both suits involved claims based on the same transaction between Plaintiff and Old Republic. In the Johnson matter, the Shelby County Chancery Court granted Plaintiff's motion for judgment on the pleadings and awarded Plaintiff the full amount in controversy.  Both suits involved the same parties or their privies.  Specifically, Defendant argues that it is in privity with Johnson in that both shared an identity of interests relating to the subject matter of the litigation, the Notredan check.  As such, Defendant asserts that Plaintiff could and should have brought its claims against Defendant in the previous suit.

Second, even if this suit is not res judicata, Defendant argues that Plaintiff has failed to state a claim against it.  Plaintiff's claim sounding in negligence is preempted as it were by the UCC. Plaintiff's conversion claim fails as a matter of law because Plaintiff never received delivery of the check.  Defendant cites for support Tenn. Code Ann. § 47–3–420(a), which precludes payees of checks from bringing a conversion claim when the payee did not receive delivery of the check. Finally, Defendant requests in the alternative that the Court stay the case pending the outcome of the declaratory judgment action in *Colony Insurance Co. v. David J. Johnson, P.C.*, no. 2:11-cv-02866-STA-dkv.  Defendant argues that Colony Insurance is the malpractice insurer for Johnson and in its suit disclaims any obligation to indemnify Johnson.  In the event that Colony Insurance does not prevail, Defendant contends that Colony Insurance will pay Plaintiff the judgment Plaintiff obtained against Johnson in state court.  In the interests of justice then, Defendant asks the Court to stay the proceedings in this case.

In its response in opposition, Plaintiff argues that the pleadings in this case demonstrate that disputed facts exist, making judgment on the pleadings improper.  With respect to Defendant's first argument that Plaintiff's claim is barred as res judicata, Plaintiff points out that Defendant failed to plead res judicata as an affirmative defense in its answer.  Even if Defendant had pleaded the defense, Plaintiff argues that res judicata does not apply.  According to Plaintiff, Regions Bank has never been a party to any previous litigation involving the same parties or the same issues presented in this case.  Plaintiff contends that Defendant is not in privity with Johnson and that Defendant has denied in its answer any vicarious liability for Johnson's acts.  Regarding the merits of its pleadings, Plaintiff argues that Defendant had duties under several sections of the UCC and breached those duties by honoring the check made payable to Plaintiff.  In sum, Plaintiff argues that "in the absence of undisputed facts, and in the presence of pleadings which dispute[] every allegation," the Court should deny Defendant's Motion.

Defendant has filed a reply.  Defendant points out  that Plaintiff's response fails to address several arguments raised in the Motion, including Defendant's assertions that (1) under the UCC Plaintiff cannot state a claim for conversion; (2) the UCC precludes a claim for negligence; and (3) the Court should at the very least stay the proceedings.  On the issue of res judicata, Defendant argues that res judicata applies even though Defendant was not a  party to the Johnson suit.  Defendant and Johnson share an identity of interests and therefore are in privity with each other for purposes of Plaintiff's claims.  Therefore, Defendant contends that the Court should grant its Motion or in the alternative stay this case pending the outcome of the declaratory judgment action.

On April 20, 2012, and subsequent to the filing of Plaintiff's response brief, Defendant filed

a motion to amend its answer (D.E. # 33) for the purpose of pleading res judicata as an affirmative defense.   Plaintiff never filed a response in opposition to Defendant's motion within the time permitted by the Local Rules.   On May 8, 2012, the Court granted Defendant's motion to amend its answer (D.E. # 34), and on the same day, Defendant filed an Amended Answer (D.E. # 35).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[2]  Motions for judgment on the pleadings may be granted where the moving party "is entitled to judgment as a matter of law."[3]  Just as with Rule 12(b)(6) motions, the Court must consider a Rule 12(c) motion by taking all the "well-pleaded material allegations of the pleadings of the opposing party" as true.[4]   A pleading's factual allegations must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible.[5]  However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion for judgment on the pleadings, nor are recitations of the elements

---

[2] Fed. R. Civ. P. 12(c).

[3] *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010).

[4] *Id*.  In its response in opposition, Plaintiff misstates the standard of review for motions under Federal Rule of Procedure 12(c).  The fact pleadings need not be undisputed, as Plaintiff argues.  On the contrary, the Court must accept Plaintiff's fact allegations as true for purposes of the Motion.

[5] *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

of a cause of action sufficient.[6]  Thus, although the factual allegations in a claim need not be detailed,

they "must do more than create speculation or suspicion of a legally cognizable cause of action; they

must show entitlement to relief."[7]

## ANALYSIS

The Court holds that Defendant is entitled to judgment on the pleadings as to all of Plaintiff's

claims against it.  The Court will consider each of the issues presented in turn.

## I. Claim Preclusion

Defendant's primary argument for dismissal is that Plaintiff's claims against it are barred as

res judicata.[8]  Res judicata, or claim preclusion, is the doctrine by which a final judgment on the

merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising

a new defense to defeat a prior judgment.[9]  Claim preclusion bars not only relitigating a claim

---

[6] *Reilly v. Vadlamudi*, — F. 3d — , 2012 WL 1889300, at *2 (6th Cir. May 25, 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

[7] *Id.* (citing *Twombly,* 550 U.S. at 555).

[8] The Sixth Circuit has remarked that "the standards set out in Rule 12(b)(6) typically set a high hurdle for the application of res judicata . . ." *Hanger Prosthetics & Orthotics East, Inc. v. Henson*, 299 F. App'x 547, 555–56 (6th Cir. 2008) (applying Tennessee law of claim preclusion).  The Sixth Circuit in *Hanger Prosthetics* nevertheless found that it was proper to reach the issue where "the relevant facts are uncontroverted."  *Id.* at 556.  This Court has already discussed the similarity between the standard of review for Rule 12(b)(6) motions and Rule 12(c) motions generally.  Thus, the same "high hurdle for the application of res judicata" on a Rule 12(b)(6) motion arguably would apply in the context of a Rule 12(c) motion, unless the relevant facts are uncontroverted.  Under the circumstances, the Court has concern about whether dismissal on the basis of claim preclusion is procedurally proper in this case.  Because Plaintiff has not raised the issue and because the Court concludes that Defendant has not established all of the elements of claim preclusion, the Court need not resolve the question here.

[9] *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).  *See also Richardson v. Tenn. Bd. of Dentistry,* 913 S.W.2d

7

previously adjudicated, it also bars litigating a claim or defense that should have been raised, but was not, in the prior suit.[10]  "The central purpose of claim preclusion is to prevent the relitigating of issues that were or could have been raised in [a prior] action."[11]  The Court must apply the law of the state of Tennessee to determine what preclusive effect the state court's judgment has on the claims before this Court.[12]  In order to assert claim preclusion under Tennessee law, a party must demonstrate that (1) the prior decision was a final decision on the merits, (2) the present action is between the same parties or their privies as those to the prior action; (3) the claim in a present action was or should have been litigated in the prior action; and (4) an identity exists between the prior and present actions.[13]  "The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together."[14]

---

446, 459 (Tenn. 1995).  In *Mitchell*, the Sixth Circuit noted that "the United States Supreme Court expressed its preference for the use of the term 'claim preclusion,' rather than the more traditionally utilized term 'res judicata.'" *Mitchell*, 343 F.3d at 819 n.5 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).  In *Migra*, the Supreme Court explained that "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra*, 465 U.S. at 77 n.1.  In the case at bar, Defendant Regions Bank argues that Plaintiff's claims against it should have been raised in Plaintiff's suit against Johnson. Therefore, the Court will refer to Defendant's theory as one for claim preclusion.

[10] *Mitchell*, 343 F.3d at 819 (citations omitted).

[11] *Federated Dep't Stores, Inc., v. Moitie,* 452 U.S. 394, 398 (1981) (quotations omitted).

[12] *Abbott v. Mich.*, 474 F.3d 324, 330 (6th Cir. 2007).

[13] *Lien v. Couch*, 993 S.W.2d 53, 55–56 (Tenn. Ct. App. 1998); *see also Mitchell*, 343 F.3d at 819.

[14] *Lien*, 993 S.W.2d at 56.

The Court holds that Defendant has not shown that the doctrine of claim preclusion applies to Plaintiff's claims in this case. The prior action in this instance was Plaintiff's suit in state court against Johnson. However, Defendant has not established that the case at bar involves the same parties or their privies, specifically how Regions Bank stands in privity with Johnson. "The concept of privity relates to the subject matter of the litigation."[15] "Privity connotes an identity of interest, that is, a mutual or successive interest to the same rights."[16] Analyzing an identity of interest for purposes of res judicata is highly fact specific and therefore requires a case-by-case determination.[17] According to the Complaint, Johnson was the closing attorney for the tax-favored transaction Plaintiff attempted to complete with Old Republic. Johnson improperly deposited a check made out to Plaintiff for over $500,000 into his IOLTA account with Regions Bank. According to Defendant, it shares an identity of interests with Johnson "with respect to the Notredan check" that Johnson improperly deposited with Defendant. Defendant argues that Plaintiff "seeks to have both Regions and [Johnson] held liable because of their 'relation to the subject matter of the litigation.'"[18]

---

[15] *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000) (citing *Harris v. St. Mary's Med. Ctr. Inc.,* 726 S.W.2d 902, 905 (Tenn. 1987); *Shelley v. Gipson,* 400 S.W.2d 709, 712 (Tenn. 1966)); *see also Hanger Prosthetics*, 299 F. App'x at 555–56 (applying Tennessee law).

[16] *Cihlar,* 39 S.W.3d at 180 (citations omitted); *see also Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, — F.3d — , 2012 WL 1987138, at *5 (6th Cir. June 5, 2012) ("Privity is limited to a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.") (internal quotations omitted).

[17] *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F.3d 747, 759 (6th Cir. 2003) (citing *Cihlar,* 39 S.W.3d at 181). The Sixth Circuit has held that the issue of privity is a question of fact, *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981), further reinforcing the view that a claim should not be dismissed as res judicata on a Rule 12(c) motion. *See* n. 8, *supra*.

[18] Def.'s Mem. in Support 9 (D.E. # 25-1).

The Court holds that other than the obvious fact that both Johnson and Regions wish to avoid liability to Plaintiff for the deposit of the check at issue, Defendant has not shown how it has a mutual or successive interest to the same rights as Johnson.[19]  According to the Complaint at bar, Johnson deposited the proceeds of the February 2011 transaction into an IOLTA account at Regions, and Regions allegedly accepted the check made out to Plaintiff for payment without a proper endorsement.  Based on these fact pleadings, it is not clear how Johnson and Regions have a mutual interest to the same rights or stand in the same position with respect to Plaintiff's claims against each of them.[20]  For example, Defendant has not shown that in order to prevail against Johnson in the prior suit, Plaintiff had to necessarily litigate issues regarding the conduct of Regions Bank or that the same conduct of Regions Bank forms the basis for Plaintiff's claims in this case.[21]  Put another way, a finding on the issue of Johnson's liability in the prior action does not necessarily dictate a finding on the issue of Regions Bank's liability in this action.  On the contrary, it would appear that Johnson and Regions Bank stand in very different positions with respect to Plaintiff.  For similar reasons, Defendant has not shown how the interests of Regions Bank were adequately represented

---

[19] Defendant has not provided the state court's order or judgment for the Court's review. As a result, the Court cannot determine the precise allegations Plaintiff made against Johnson in that suit.  Even so, Defendant would not be able to demonstrate how it stands in privity with Johnson.

[20] Although Plaintiff emphasizes the lack of contractual or another traditional relationship of privity between Johnson and Regions Bank, the test for privity with respect to claim preclusion does not focus on these formal relationships but rather on whether the parties have a mutual interest or identity of interest. *Phillips v. Gen. Motors Corp.*, 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984).

[21] *Cf. Hanger Prosthetics*, 299 F. App'x at 555–56 ("Here, [the plaintiff] brings an action against [a corporation's owners] after having previously litigated the same cause of action against [the corporation]. *Both cases involve the alleged actions of [the owners]* in their capacities as principals and owners of [the corporation].") (emphasis added).

10

by Johnson in the previous suit.  Therefore, the Court concludes that Defendant has not established

privity, an essential element of the affirmative defense of claim preclusion.  Accordingly,

Defendant's Motion cannot be granted as to this issue.[22]

## II.  Failure to State a Claim

### A. Negligence

Defendant also argues that the Court should dismiss Plaintiff's claims sounding in negligence

because they are preempted by the Tennessee UCC.  In a case involving a claim of negligence

against a bank for its handling of a check, the Tennessee Court of Appeals explained that

> Articles 3 and 4 of the UCC embody a delicately balanced statutory scheme governing
> the endorsement, negotiation, collection, and payment of checks. They provide discrete
> loss-allocation rules uniquely applicable to banks . . . . The weight of the case law comes
> down against permitting common-law actions to displace the UCC's provisions regarding
> transactions governed by Articles 3 and 4. Accordingly, a large number of courts have
> refused to recognize common-law or non-UCC claims in general, and specifically
> common-law or non-UCC negligence claims or conversion claims, arising from
> transactions governed by Articles 3 or 4. The transactions at issue in this case fall
> squarely within the scope of Articles 3 and 4. Therefore, [the plaintiff]'s claims against
> the bank and the scope of the remedies available to [the plaintiff] are governed solely by
> the UCC.[23]

Here the Complaint alleges that Defendant had a duty to conduct business in a certain manner and

that the duty existed by virtue of the UCC (but without specifying which UCC sections gave rise to

the duty) and "sound banking practices."  The Complaint further alleges that Defendant breached its

duty by honoring the check Johnson improperly deposited but does not allege in any way which

sections of the UCC Defendant breached.  To the extent that Plaintiff's claim can be construed as

---

[22] *See Harris*, 726 S.W.2d at 905.

[23] *C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 281 (Tenn. Ct. App.
2007); *see also Contour Indus., Inc. v. U.S. Bancorp*, No. 2:07-cv-234, 2008 WL 2704431, at
*1–2 (E.D. Tenn. July 3, 2008).

a cause of action for common law negligence, that claim is not available under Tennessee law. Therefore, Defendant is entitled to judgment as a matter of law on a common law negligence claim.

Insofar as Plaintiff pleads a negligence claim under the UCC, Plaintiff has not shown which UCC provision Defendant's conduct breached.  In its response brief (and not in its Complaint), Plaintiff cites three different sections of the Tennessee UCC.  However, the Court finds that none of the sections cited are relevant to the claims alleged in this case.  For example, Plaintiff cites for support Tenn. Code Ann. § 47–1–203 for the proposition that the UCC imposes on Defendant a duty to conduct its business in good faith.[24]  However, former section 47–1–203 relating to the obligation of good faith was repealed effective July 1, 2008.[25]  What is more, the Tennessee Supreme Court construed the former UCC provision to impose a duty of good faith and fair dealing upon parties in

---

[24] Pl.'s Resp. in Opp'n 5 (D.E. # 30).  Plaintiff has not alleged that Defendant honored and paid the check in bad faith.  The Tennessee Uniform Fiduciaries Act, Tenn. Code Ann. §§ 35–2–107 *et seq.*, ("the UFA") "shields depositary banks from liability arising from the actions of a fiduciary depositor, unless the bank acts with 'actual knowledge' of a breach or 'knowledge of such facts that its action . . . amounts to bad faith.'" *John C. McLemore v. Regions Bank*, — F.3d —, 2012 WL 2052950, at *9 (6th Cir. June 8, 2012).  The Tennessee Supreme Court has held that the Tennessee UCC and UFA should be construed together.  *McConnico v. Third Nat'l Bank*, 499 S.W.2d 874, 881–82 (Tenn. 1973).  It is not clear to the Court that the UFA would apply under the circumstances alleged in this case.  Furthermore, the Complaint does not specifically plead the UFA, and neither party has addressed it in the briefing on the Rule 12(c) Motion.  Therefore, the Court declines to consider its possible application here.

[25] Tenn. Code Ann. § 47–1–203, Hist. & Stat. Notes.  Tenn. Code Ann. § 47–1–201(19) continues to include a general definition for "good faith" and defines the phrase to mean "honesty in fact in the conduct of the transaction involved."  Tenn. Code Ann. § 47–1–201(19). The Tennessee Supreme Court has held that the UCC's general definition of "good faith" applies to Articles 3 and 4 of the UCC.  *The Bank/First Citizens Bank v. Citizens & Assocs.*, 82 S.W.3d 259, 264 (Tenn. 2002).  Even so, Plaintiff has not cited a specific provision of Article 3 or Article 4 of the Tennessee UCC creating a duty of good faith and fair dealing as between Plaintiff and Defendant.

the performance of a contract.[26]  Plaintiff has not alleged that a contract between Plaintiff and Defendant existed or that such a contract governed Defendant's payment of the check.  The Court finds then that Plaintiff's reliance on Tenn. Code Ann. § 47–1–203 is misplaced.

For similar reasons, Plaintiff's citation to Tenn. Code Ann. § 47–1–205 is unavailing.  The current version of that section addresses the reasonable time for taking action.[27]  Plaintiff cites the section as the source of a duty created under the UCC to act in accordance with "standard procedures."[28]  The former section 47–1–205 did relate to course of dealing and usage of trade; however, the former version was repealed effective July 1, 2008.[29]  The same principles on course of dealing and usage of trade are now codified at Tenn. Code Ann. § 47–1–303.[30]  Even so, the Court holds that course of dealing or the usage of trade is "relevant to ascertaining the meaning of the parties' agreement" and not the source of any duty independent of a contract.[31]  Indeed, courts applying Tennessee law have considered course of dealing and usage of trade in aid of construing

---

[26] *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) ("What this duty [of good faith and fair dealing] consists of, however, depends upon the individual contract in each case.").

[27] Tenn. Code Ann. § 47–1–205.

[28] Pl.'s Resp. in Opp'n 5.

[29] § 47–1–205, Hist. & Stat. Notes.

[30] *See* § 47–1–303(b) & (c).

[31] § 47–1–303(d); *see also* § 47–2–202 ("Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of dealing or usage of trade (§ 47–1–303) . . . .").

contracts, not as the source of an independent duty to act.[32]  Again, Plaintiff does not allege that it

had a contract with Defendant or how evidence of course of dealing or usage of trade would be

relevant to the construction of the contract.  Therefore, the Court concludes that section 47–1–303

does not create an independent duty upon which Plaintiff can base a negligence claim under the

UCC.

Plaintiff has also cited in its brief Tenn. Code Ann. § 47–3–406 in support of a claim that

Defendant negligently contributed to a forged endorsement.  Just as with the other code sections

Plaintiff cites for support, the Court holds that Plaintiff has failed to state a negligence claim under

this UCC provision.  Section 47–3–406 provides

> A person whose failure to exercise ordinary care substantially contributes to an alteration
> of an instrument or to the making of a forged signature on an instrument is precluded
> from asserting the alteration or the forgery against a person who, in good faith, pays the
> instrument or takes it for value or for collection.[33]

The statute bars a party from recovering for a bank's payment on a forged instrument under certain

circumstances.[34]  The Court finds that this section is not the source of an independent duty for a

depository bank such as Defendant but simply codifies a defense against a claim that a bank

---

[32] *E.g. Clark v. BP Oil Co.*, 137 F.3d 386, 392 (6th Cir. 1998) (applying Tennessee law);
*Seessel Holdings, Inc. v. Fleming Cos., Inc.*, 949 F. Supp. 572, 579 (W.D. Tenn. 1996); *Harry J.
Whelchel Co., Inc., v. Ripley Tractor Co., Inc.*, 900 S.W.2d 691, 693 (Tenn. Ct. App. 1995).

[33] § 47–3–406(a); *see also First Citizens Bank*, 82 S.W.3d at 262–63.

[34] In order to preclude a party from asserting a forgery against a bank, the bank must show
(1) that it took the instrument in good faith; (2) that the party attempting to recover from the bank
failed to exercise ordinary care; and (3) that this failure "substantially contributed" to the making
of the forged signatures on the instrument.  *First Citizens Bank*, 82 S.W.3d at 263.

14

improperly paid a forged check.[35]  For this reason alone, Plaintiff's single citation to this section as a possible source for its negligence claim under the UCC is unpersuasive.  Furthermore, the Complaint does not allege that the Notredan check was forged or altered in any way.  Rather, Plaintiff alleges that Defendant "breached its duty by honoring a check made payable to the order of Notredan, LLC which was not endorsed by Notredan, LLC . . . ."[36]  In the absence of some allegation that Defendant improperly paid a forged check, it is not clear why section 47–3–406 would apply in this case.  For these reasons, the Court holds that Plaintiff has not stated a claim pursuant to Tenn. Code Ann. § 47–3–406(a).  Therefore, Defendant's Motion is **GRANTED** as to Plaintiff's negligence claim.

## B. Conversion

Finally, Defendant argues that the Complaint fails to state a claim for conversion.  Defendant asserts that "[t]he mainstay of Plaintiff's Complaint is that Plaintiff never received delivery of the Notredan Check."[37]  The Complaint alleges Defendant honored and paid the check despite the fact that it was made payable to Plaintiff and was not endorsed by Plaintiff.  To the extent that the pleadings can be construed to include a conversion claim, the Court holds that Defendant is entitled to judgment as a matter of law.  For the reasons already discussed, a conversion claim under Tennessee common law is not available based on the payment of a check.  With respect to a claim for conversion under the Tennessee UCC, Tenn. Code Ann. § 47–3–420(a) provides as follows: "The

---

[35] The Tennessee Supreme Court in First Citizens Bank refers to this as the negligent drawer defense.  *First Citizens Bank*, 82 S.W.3d at 267.

[36] Compl. ¶ 9.

[37] Def.'s Mem. in Support 10 (D.E. # 25-1).

15

law applicable to conversion of personal property applies to instruments.  An instrument is also converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."[38]  Plaintiff's Complaint alleges that Regions Bank paid the check to Johnson, a person not entitled to receive payment on the check, thus stating a claim for conversion.

Nevertheless, the UCC goes on to limit the parties who may bring claims for conversion and specifically denies a cause of action to the issuer or acceptor of the instrument as well as a payee or endorsee who did not receive delivery of the instrument.[39]  The comments to Tenn. Code Ann. § 47–3–420(a) explain that "[u]ntil delivery, the payee does not have any interest in the check" and "[t]he payee never became the holder of the check nor a person entitled to enforce the check."[40]  It is undisputed that Plaintiff was the payee on the check at issue and never took delivery of the check due to the unauthorized acts of Johnson.  As such Plaintiff has no cause of action for conversion under the UCC against Defendant.  Therefore, Defendant's Motion is **GRANTED** as to this issue.[41]

---

[38] Tenn. Code Ann. § 47–3–420(a).

[39] *Id.*

[40] *Id.*, cmt. 1.

[41] Tenn. Code Ann. § 47–3–307 applies to a represented person's claim to an instrument on the basis that a fiduciary's transaction with the instrument is a breach of fiduciary duty.  See § 47–3–307.  The Complaint does not specifically plead this section of the UCC, and neither party has addressed it in the briefing on the Rule 12(c) Motion.  Therefore, the Court declines to consider Tenn. Code Ann. § 47–3–307 here.

## CONCLUSION

The Court holds that Defendant has not established that Plaintiff's suit against Defendant is barred under the doctrine of claim preclusion.  Regardless, the Complaint fails to state a claim for negligence or conversion under Tennessee law or the UCC.  Therefore, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.  As a result, the Court finds that Defendant's request to stay the proceedings in this case is moot.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 20, 2012.

17