**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| NOTREDAN, LLC,<br>a Tennessee Limited Liability Company, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>OLD REPUBLIC EXCHANGE<br>FACILITATOR COMPANY<br>and REGIONS BANK,<br> )<br>Defendants. ) | No. 11-2987-STA-tmp |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT OLD REPUBLIC**
**EXCHANGE FACILITATOR COMPANY'S MOTION FOR ATTORNEY FEES AND**
**COSTS**

Before the Court is Defendant Old Republic Exchange Facilitator Company's Motion for

Attorney Fees and Costs (D.E. # 39) filed on June 19, 2012.  Plaintiff Notredan, LLC has filed a

response in opposition to Defendant's Motion (D.E. # 41).[1]  For the reasons set forth below,

Defendant's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**.

**BACKGROUND**

The Court has reviewed the factual and procedural background of this case in previous

orders.  Plaintiff sought a property transaction that would allow it to take advantage of Section 1031

of the Internal Revenue Code.  On February 11, 2011, Plaintiff entered into a contract with

---

[1] Defendant has filed a motion for leave to file a reply brief (D.E. # 43).  Because the
Court finds that a reply is unnecessary to reach the issues presented, Defendant's motion is
denied.

1

Defendant by which Defendant would act as a "qualified intermediary" for the 1031 exchange. Pursuant to the parties' contract, David J. Johnson, P.C. ("Johnson") was appointed to act as the closing agent for the property transfer.  Johnson received as part of the 1031 exchange a wire transfer of $525,000.00, and was to hold the funds in his trust account pending the completion of the transaction.  When the parties could not finalize the 1031 exchange and Plaintiff sought the funds from Johnson, Plaintiff learned that Johnson no longer had the money.  Plaintiff brought this suit against Defendant, alleging that Johnson acted as Defendant's agent and seeking to hold Defendant vicariously liable for Johnson's negligence.

On April 6, 2012, the Court dismissed all of Plaintiff's claims against Defendant for failure to state a claim.  Viewing the pleadings in the light most favorable to Plaintiff, the Court assumed that Plaintiff had pleaded sufficient facts to show that Johnson acted as Defendant's agent during the proposed 1031 exchange.  However, the Court construed section 21 of the parties' contract to limit Defendant's liability to Plaintiff for "circumstances beyond the reasonable control of" Defendant. The Court further construed the agreement to define such acts to include Johnson's "failure to follow closing instructions and/or failure to perform."   The Court held then that Plaintiff's claim to hold Defendant vicariously liable for the acts of Johnson failed because the contract between the parties removed Defendant's liability for the agent's failure to follow closing instructions and failure to perform.  As such, the Court granted Defendant's Rule 12(b)(6) motion.

In its Motion for Attorney Fees and Costs, Defendant seeks an award of $19,248.34 in attorney fees and $1,095.42 in costs.  Defendant cites section 17 of the parties' contract, which entitles the prevailing party in a suit to enforce or interpret any part of the contract to recover its reasonable attorney fees.  Defendant argues that it based its requested fees on a lodestar calculation

of the number of hours reasonably expended in this case multiplied by the prevailing market rate. Defendant has attached a billing summary to its Motion, demonstrating that counsel for Defendant spent 77.65 billable hours providing legal services. Defendant has also attached the affidavit of Don L. Hearn, Jr., lead counsel for Defendant in this matter. In his affidavit, Hearn explains the hourly rates of each attorney and paralegal who provided legal services to Defendant and attests that these rates are the prevailing market rates for legal professionals within this District. Defendant further asserts that it has achieved excellent results in this case, obtaining the dismissal of all of Plaintiffs' claims against it at the pleadings stage. Based on this showing, Defendant seeks a full award of its reasonable attorney fees in the amount of $18,331.75. Finally, Defendant seeks its fees incurred in preparing its fee petition, specifically $916.59, an amount representing five percent (5%) of its total award of attorney fees.

Plaintiff has responded in opposition to Defendant's Motion for Attorney Fees and Costs. Rather than objecting to the reasonableness of the award sought by Defendant, Plaintiff argues that an award of fees is not warranted because the contract between the parties is a contract of adhesion. Plaintiff cites for support the affidavit of William Anderton, the Chief Manager of Notredan, L.L.C., in which Anderton states that he had no input or other opportunity to negotiate the agreement with Defendant. Plaintiff also briefs relevant Tennessee law on fiduciary duty and contracts of adhesion. Plaintiff does not, however, show why reasonable attorney fees should not be awarded.

## ANALYSIS

In a diversity case such as the one at bar, state law governs the issue of attorney fees.[2]

---

[2] *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) (applying Tennessee law).

Tennessee generally follows the "American Rule" that a party may not recover its attorney fees unless a statute or contract specifically provides for an such award.[3] "Parties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate the contract upon which their claims are based contain[s] a provision entitling the prevailing party to its attorney's fees."[4] Here it is undisputed that section 17 of the parties' contract provided as follows: "Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs and not as damages, reasonable attorney fees to be fixed by the court."[5] The Court construes this plain and unambiguous provision to mean that Defendant as the prevailing party in this case is entitled to its reasonable attorney fees. Therefore, based on the parties' contract, Defendant has shown that it is entitled to an award of reasonable attorney fees.

Once a party has demonstrated the right to fees under a contractual provision, the Court has no discretion regarding whether to award reasonable attorney fees.[6] Although Tennessee has "no fixed mathematical rule" for arriving at the amount of a reasonable attorney fee,[7] the fee

---

[3] *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 311 (Tenn. 2009) (citing *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn. 1985)); *Engstrom v. Mayfield*, 195 F. App'x 444, 451 (6th Cir. 2006) (applying Tennessee law). Just as it did at the pleadings stage, the Court will apply Tennessee substantive law to the issues presented unless otherwise noted.

[4] *Hosier v. Crye–Leike Commercial, Inc.*, No. M2000–01182–COA–R3–CV, 2001 WL 799740, at *3 (Tenn. Ct. App. July 17, 2001).

[5] Contract § 17 (D.E. # 1-2).

[6] *Albright v. Mercer,* 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Airline Constr. Inc. v. Barr,* 807 S.W.2d 247, 270 (Tenn. Ct. App.1990)).

[7] *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011) (citation omitted).

determination lies within the Court's discretion.[8]  Defendant as the prevailing party "has the burden to make out a *prima facie* case for his or her request for reasonable attorney's fees."[9]  The Tennessee Supreme Court has held that "where an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined"[10] and not simply a percentage of recovery.[11]  More specifically, the Court should analyze the reasonableness of the fees with reference to the factors set out in the Tennessee Rules of Professional Conduct 1.5.[12]  Rule 1.5 provides:

> A lawyer's fee and charges for expenses shall be reasonable. The factors to be considered in
>
> determining the reasonableness of a fee include the following:

---

[8] *Barr*, 807 S.W.2d at 270.  *See also Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 325 (6th Cir. 2008) ("Where a district court has awarded attorneys' fees under a valid contractual authorization, we recognize that it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion.").

[9] *Wilson Mgmt. Co. v. Star Distribs. Co.,* 745 S.W.2d 870, 873 (Tenn. 1988).

[10] *Id.* (citations omitted).

[11] *Nutritional Support Servs., Ltd. v. Taylor,* 803 S.W.2d 213, 216 (Tenn. 1991).

[12] *Wright*, 337 S.W.3d at 176 (citing *United Med. Corp of Tenn., Inc. v. Hohenwald Bank & Trust Co.,* 703 S.W.2d 133, 137 (Tenn. 1986)).  Defendant argues that the Court should calculate the fee award using the lodestar method; however, the Tennessee Supreme Court has cautioned that "[r]elying on the lodestar calculation alone to determine a reasonable attorney's fee is problematic." *Wright*, 337 S.W.3d at 180 (holding that the lodestar method alone should not apply to arrive at the reasonable attorney fees in a case involving a minor party).

Nevertheless, the attorney's time spent and hourly rate billed remain important factors in the Court's analysis. *Id.* at 181. ("An affidavit . . . which detailed how much time [counsel] spent on the case, what work he accomplished during that time, and when he spent that time—helps the trial court analyze several factors relevant to the determination of a reasonable attorney's fee. It not only provides the amount of time and labor that the case required, but also is useful for assessing the difficulty of the questions presented, the skills required, and the time constraints that the attorney faced.").

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of a particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and the length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyer performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee arrangement is in writing.[13]

The United States Supreme Court has held that "the most critical factor is the degree of success obtained."[14]  Although the factors in Rule 1.5 guide the Court's analysis, the reasonableness of the

---

[13] *Wright*, 337 S.W.3d at 176 (citing Tenn. R. Prof. Resp. 1.5).  *See also Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (reciting proper factors for determining whether an attorney fee awarded under 42 U.S.C. § 1988 is reasonable, including (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

[14] *Hensley v. Eckerhard*, 461 U.S. 424, 436 (1983).

fee ultimately depend upon the particular circumstances of each case.[15]

Having carefully reviewed Defendant's Motion, the billing records submitted by counsel, and the Hearn affidavit, the Court finds that the documented time and fees in this case were reasonable. Counsel has shown that his hourly rates and the rates for the other attorneys and the paralegal who assisted in this case are entirely consistent with the prevailing market rates for similar legal services in this District. Counsel's time records further show that the time spent on this matter was not excessive or duplicative. Defendant prevailed at the pleadings stage and had only begun to participate in discovery. As a result, the record shows that counsel for Defendant had devoted a little less than seventy-eight hours to the case, of which approximately forty-seven hours were related to the preparation of Defendant's motion to dismiss and the briefing in support of the motion. Due to the complexity of the issues presented in this case, including Plaintiff's theory of liability against Defendant and Defendant's theories in support of dismissal, the Court finds that counsel's time is consistent with the time, labor, and skill required to perform these legal services properly. Therefore, the Court grants Defendant's Motion for an award of reasonable attorney fees in the amount of $18,331.75.

Defendant has made separate requests for expenses and an award of attorney fees incurred for the preparation of the fee petition. With respect to Defendant's request for expenses, Defendant has produced counsel's billing records, indicating that Defendant spent $2.50 for photocopies, $1,090.52 in "Credit Card Charges," and another $2.40 in photocopies. While Defendant has shown that it is entitled to recover $4.90 in costs for photocopying, the record before the Court provides no

---

[15] *Wright*, 337 S.W.3d at 177 (citing *White v. McBride,* 937 S.W.2d 796, 800 (Tenn. 1996)).

details about the $1,090.52 in credit card expenses.  Defendant has not attached an itemization of these expenses, and counsel has not addressed these charges in his affidavit.  In the absence of clearer proof about these charges, the Court cannot determine whether Defendant is entitled to recover them here.[16]  Therefore, the Court awards Defendant expenses in the amount of $4.90.

As for Defendant's request for fees relating to the Motion for Attorney Fees, the Court grants that request but only in part.  Defendant's Motion seeks an award of five percent (5%) of the total attorney fees incurred in this case.  Attorney fees related to the preparation of a fee application are compensable.[17]  The Sixth Circuit has limited the recovery of such a fee to three percent (3%) of the hours in the main case and allowed a maximum recovery of 5% where the case actually went to trial.[18]  Even though the Court is bound to apply Tennessee substantive law on attorney fees, the Court finds that applying the Sixth Circuit cap of 3% is reasonable under the circumstances.  In this case, Defendant prevailed on a Rule 12(b)(6) motion, entitling Defendant to an additional award for litigation related to the fee issue of no more than 3% of the hours spent in the case.  Therefore, the Court awards Defendant an additional attorney fee in the amount of $549.95.

In its opposition to Defendant's Motion for Attorney Fees, Plaintiff essentially restates the

---

[16] Neither party has addressed whether expenses are even recoverable under the terms of the contract.  Apart from any contractual basis for recovery of costs, a prevailing party is entitled to recover certain expenses under federal law.  *See* 28 U.S.C. § 1920 (permitting the prevailing party to recover only specified kinds of costs: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828).

[17] *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir. 2007).

[18] *Id.* (citing *Coulter v. Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986)).

8

argument it made at the pleadings stage, asserting that the contract, including the section on the recovery of attorney fees, is unenforceable.  Plaintiff contends that the parties' agreement is a contract of adhesion and is otherwise unenforceable under Tennessee law.  The Court holds that Plaintiff has failed to show that the Tennessee courts would not enforce a contractual fee-shifting provision such as the one in section 17.  On the contrary, the Tennessee Supreme Court has held that where a contract provides for attorney fees, "[t]he parties are entitled to have their contract enforced according to its express terms."[19]  Furthermore, the Court previously reached Plaintiff's argument at the pleadings stage.  In granting the motion to dismiss, the Court found that Plaintiff had failed to show how it lacked a "realistic opportunity to bargain" or "no choice at all" in its dealings with Defendant.  As a result, Plaintiff had not shown how the contract was adhesive.[20]  The Court went on to hold that even if Plaintiff had demonstrated that the contract was adhesive, Plaintiff did not show why the Court should not enforce the contract as against Tennessee public policy.  Plaintiff has raised no argument here that would lead the Court to revisit these conclusions.  Therefore, the Court

---

[19] *Hometown Folks, LLC*, 643 F.3d at 533 (quoting *Wilson Mgmt. Co.*, 745 S.W.2d at 873).  *Cf. Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 426 (6th Cir. 2008) (holding that a contractual provision for attorney fees, which was not specifically negotiated by the parties, was unenforceable under Ohio law).

[20] Just as it did at the pleadings stage, Plaintiff relies here on the Anderton Affidavit to present facts about the "take it or leave it" nature of the transaction between the parties.  The Court declined to consider the affidavit at the pleadings stage because it was not part of the pleadings.  Order Granting Def.'s Mot. Dismiss 8-9.  Even if the Court considered the affidavit here in its analysis of the Motion for Attorney Fees, the affidavit would not change the outcome.  The evidence contained in the affidavit shows at most that the contract was a standardized form prepared with no input from Plaintiff.  The evidence, however, does not show how Plaintiff had no other choice but to sign the contract.  *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 501-502 (6th Cir. 2004) (applying Tennessee law) ("The last element of adhesion is the absence of a meaningful choice for the party occupying the weaker bargaining position.").  Therefore, the facts in Anderton's Affidavit do not alter the Court's conclusion that Plaintiff has failed to show how the contract was adhesive.

finds no merit in Plaintiff's position.[21]

## CONCLUSION

The Court holds that the contract between the parties allows the prevailing party in a contractual dispute to recover reasonable attorney fees.  As the prevailing party, Defendant has met its burden to show that a reasonable attorney fee would be $18,331.75, an amount including all of counsel's time billed in this case.  Defendant has shown that it is entitled to expenses in the amount of $4.90 and an additional attorney fee of $549.95 for making its fee application to the Court.  Therefore, Defendant's Motion for Attorney Fees and Costs is **GRANTED IN PART, DENIED IN PART**.

**IT IS SO ORDERED.**

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 25, 2012.

---

[21] Plaintiff's response in opposition also includes the following statement concerning the order of dismissal: "The court further noted that fiduciary relationships and fiduciary obligations are not generally created as between 'sophisticated commercial entities' but there was no proof of Notredan's sophistication, apart from the fact that it once owned some real estate and that it had been duped into losing $525,000.00 by Old Republic's closing agent."  Pl.'s Resp. in Opp'n 3 (D.E. # 41).  The Court's order of dismissal never refers to Plaintiff as a "sophisticated commercial entity" and none of the Court's holdings were based on such a finding.  Rather the Court cited the following rule from contract law: "contracts between sophisticated commercial entities, negotiated at arm's length, do not create fiduciary duties between the parties." Order Granting Def.'s Mot. Dismiss 20, n.48 (citing *O'Neal v. Burger Chef Sys., Inc.,* 860 F.2d 1241, 1349 (6th Cir. 1988); *Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002)).  The Court never concluded that Plaintiff was a sophisticated commercial entity, only that Plaintiff had not alleged the existence of a fiduciary duty Defendant owed to Plaintiff or briefed such a theory in response to the motion to dismiss.

10